## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 17 2017, 6:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald D. Levenhagen
Landman Beatty, Lawyers, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Steven E. Runyan
Kroger, Gardis & Regas, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wyckford SK Realty, LLC, | January 17, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A04-1605-MF-1159 |
| *v.* | Appeal from the Marion Superior Court |
| JPMCC 2006-CIBC14—7777 Wyckford Ct LLC, | The Honorable Michael D. Keele, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 49D07-1503-MF-8255 |

**Bradford, Judge.**

# Case Summary

[1] In 2005, Appellant-Defendant Wyckford SK Realty, LLC ("Wyckford"), former owners of Wyckford Commons, an apartment complex in Indianapolis ("the Property"), executed a promissory note ("the Note") in favor of a predecessor-in-interest of JPMCC 2006-CIBC14—7777 Wyckford Ct LLC (along with predecessors in interest, collectively, "the Bank"). The loan evidenced by the Note ("the Loan") was secured by a mortgage and security agreement ("the Mortgage"), an assignment of rents, and an escrow agreement for reserves and impounds ("the Escrow Agreement."). The Mortgage and the Escrow Agreement provided that Wyckford was responsible for all taxes related to the Property, taxes would be paid by the Bank in twelve monthly installments with transfers from Wyckford's operating account ("the Operating Account"), and payments to the Operating Account for taxes would be one-twelfth of the amount that would be sufficient to pay all taxes payable or estimated by the Bank to be payable during the next ensuing twelve months.

[2] In 2006, the Property's value was assessed at approximately eighty percent higher than it had been previously, resulting in a significant increase in property tax due in 2008. Wyckford appealed the higher assessment for 2006 and for later years. Despite Wyckford's appeal, the Bank directed it to make the increased tax payments based on the higher assessed value of the Property. Throughout 2009 to 2012, however, Wyckford failed to provide funds sufficient to make the payments the Bank directed it to make, which resulted in accrued default interests and late fees.

[3]     Ultimately, Wyckford also failed to make a number of payments on the Loan. At some point, administration of the Loan was assumed by C-III Asset Management LLC ("the Special Servicer"), which took over from Berkadia Commercial Mortgage, LLC ("the Master Servicer"). In early 2015, the Bank filed a foreclosure action and, later, both parties moved for summary judgment on the claim. The trial court entered summary judgment in favor of the Bank on the foreclosure claim and awarded it some $13,000 in "Legal Costs." Wyckford contends that the trial court erred in entering summary judgment in favor of the Bank and abused its discretion in awarding the Bank attorney's fees. While we disagree that the trial court erred in entering summary judgment in favor of the Bank, we reverse the award of attorney's fees and remand for a hearing on the question.

## Facts and Procedural History

[4]     In 2005, Wyckford operated the Property, an apartment complex in Indianapolis. On or about November 30, 2005, Wyckford executed the Note in favor of the Bank, in the original principal amount of $8,127,297.00. The Loan was administered by the Master Servicer. The Note required Wyckford to make monthly payments of $46,247.93 from January of 2006 until November of 2015. *Inter alia*, the Loan was secured and evidenced by the Mortgage and the Escrow Agreement. The Mortgage provided, in part, that

> (a)     [Wyckford] shall pay all taxes, assessments, water rates, sewer rents, governmental impositions, and other charges, including without limitation vault charges and license fees for the

use of vaults, chutes and similar areas adjoining the Land, now or hereafter levied or assessed or imposed against the Property or any part thereof (the **"Taxes"**)[.]

Appellee's Addendum p. 16.

[5] The Escrow Agreement, *inter alia*, governed how taxes on the Property would be paid by the transfer of funds from the Operating Account, and provided as follows:

ARTICLE 3 – TAX AND INSURANCE IMPOUNDS

Section 3.1   THE TAX AND INSURANCE FUNDS DEPOSIT

(a)   On or before the date hereof, [Wyckford] shall make an initial deposit of the Tax and Insurance Funds, as hereinafter defined, of an amount which, when added to the monthly amounts to be deposited as specified below will be sufficient *in the estimation of* [*the Bank*] *to satisfy the next due taxes*, assessments, insurance premiums, and other similar charges.  Additionally, on the first day of each calendar month, [Wyckford] shall pay [the Bank] (a) *one-twelfth of the amount that would be sufficient to pay all Taxes payable or estimated by* [*the Bank*] *to be payable*, during the next ensuing (12) twelve months[.]

Appellee's Addendum p. 24 (emphases added).  Wyckford consented to the payment of the monthly loan payment and tax escrow payments by the transfer of funds from the Operating Account.

[6] For the year 2006, the Property was assessed at a value of $10,198,900.00, an increase of almost eighty percent from the previous assessment of $5,669,900.00.  By July of 2008, when the tax payments based on the 2006

assessment became due, Wyckford had retained counsel and filed an appeal of that assessment. Ultimately, Wyckford appealed the 2007, 2008, and 2009 assessments as well.[1]

[7] Meanwhile, the Bank, through the Master Servicer, determined that Wyckford's tax payments would be based on the higher 2006 assessment and continued to transfer funds from the Operating Account consistent with that determination. In November and December of 2008, when the Master Servicer attempted withdrawals, the funds in the Operating Account were insufficient to cover the monthly loan and tax payments. Throughout 2009 to 2012, Wyckford failed to provide funds to the Operating Account sufficient to cover the monthly payments. In late 2013, administration of the Loan was transferred to C-III Asset Management LLC ("the Special Servicer"), and Mark Heller was assigned responsibility for the Loan. Heller sent a letter to Wyckford's representative Norman Schwab notifying it that the Loan had been transferred to the Special Servicer.

[8] On March 13, 2015, the Bank filed a mortgage foreclosure action. Wyckford denied liability and counterclaimed that the Bank had first breached the Escrow Agreement, specifically that the Bank had taken excessive funds from the Operations Account to satisfy Wyckford's tax liability. On July 27, 2015, the

---

[1] Wyckford was ultimately only partially successful in its appeals, as the assessment for 2006 was reduced from $10,198,900 to $7,472,600, for 2007 reduced from $9,502,300 to $8,634,200, for 2008 reduced from $9,494,400 to $8,841,200, and for 2009 reduced from $9,046,800 to $9,018,900. In any event, Wyckford's property tax liability increased significantly.

trial court, pursuant to the Bank's motion, put Wyckford into receivership. On November 17, 2015, the Bank filed for summary judgment on its foreclosure claim. On April 29, 2016, the trial court granted summary judgment in favor of the Bank, denied Wyckford's cross-motion for summary judgment, and determined the award to be $8,935,602.48 plus accrued interest and a decree of foreclosure in the Bank's favor. In its order on the parties' motions for summary judgment, the trial court noted that the money judgment included $13,603.50 in "Legal Fees[.]" Appellant's App. p. 15.

[9] On May 4, 2016, the Bank filed its praecipe for Sheriff's sale, which sale was set for July 20, 2016. When Wyckford moved to stay foreclosure and the Sheriff's sale pending appeal, the trial court ordered that Wyckford post a $2,000,000 bond, which it did not pay and attempted unsuccessfully to have reduced. On July 20, 2016, the Marion County Sheriff held an auction, at which the Bank successfully bid for the Property.

# Discussion and Decision

# I. Summary Judgment

Wyckford contends that the trial court erred in granting summary judgment in favor of the Bank because it violated the terms of the Escrow Agreement before Wyckford did.[2]

> When reviewing a grant or denial of a motion for summary judgment our standard of review is the same as it is for the trial court. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4 (Ind. 2010). The moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012). Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, then the nonmoving party must come

---

[2] The Bank contends that Wyckford has waived this claim by virtue of signing and retuning a pre-negotiation letter, which provided, in part, as follows:

> The Mortgage Loan is currently in default. [The Bank] and [the Special Servicer] are willing to have discussions ("Discussions") with [Wyckford] concerning the Mortgage, the Loan Documents and the Property, provided, as consideration for entering into the Discussions, [Wyckford] executes a copy of this letter to confirm the understanding of the parties with respect to the Discussions. Accordingly, [the Bank], [the Special Servicer] and [Wyckford] hereby agree that:
> ….
> 2. Discussions: Any party may terminate the Discussions at any time for any or no reason whatsoever without obligation or liability to any other party.
> ….
> 5. No Default by [the Bank][:] [Wyckford] hereby acknowledges and agrees that there are no defaults by [the Bank], [the Special Servicer], or any other servicer, or its/their predecessors-in-interest, if any, under or in connection with the Mortgage Loan or any of the Loan Documents.
> 6. No Claim Against [the Bank][:] [Wyckford] acknowledges and agrees that it currently possesses no claim against [the Bank], [the Special Servicer] or any other servicer, or its/their predecessor-in-interest[.]

Appellee's Addendum pp. 32-34. Despite the fact that Wyckford agreed with the letter's statements that the Bank had committed no default and that Wyckford has no claims against the Bank, the letter also provides that the termination of negotiations (which occurred) would result in no obligations or liability by any party to any party. Any admissions by Wyckford contained in the letter were negated by the termination of negotiations.

forward with evidence establishing the existence of a genuine issue of material fact. *Id.* In determining whether summary judgment is proper, the reviewing court considers only the evidentiary matter the parties have specifically designated to the trial court. *See* Ind. Trial R. 56(C), (H). We construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party. *Plonski*, 930 N.E.2d at 5. The fact that the parties have filed cross-motions for summary judgment does not alter our standard for review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Hardy v. Hardy*, 963 N.E.2d 470, 473 (Ind. 2012).

*Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012).

Generally, construction of a written contract is a question of law for the trial court for which summary judgment is particularly appropriate. *Mid State Bank v. 84 Lumber Co.*, 629 N.E.2d 909, 914 (Ind. Ct. App. 1994). However, if the terms of a written contract are ambiguous, it is the responsibility of the trier of fact to ascertain the facts necessary to construe the contract. *Id*. Consequently, whenever summary judgment is granted based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Id*.

*Rogier v. Am. Testing & Eng'g Corp.*, 734 N.E.2d 606, 613 (Ind. Ct. App. 2000), *trans. denied*.

[11] Specifically, Wyckford contends that the trial court erred in entering summary judgment in favor of the Bank on the foreclosure claim because the designated evidence establishes that the Bank violated the terms of the Escrow Agreement

by demanding that it make tax payments based on the higher, 2006 assessed value. As previously mentioned, Section 3.1(a) of the Escrow Agreement provides as follows:

> On or before the date hereof, [Wyckford] shall make an initial deposit of the Tax and Insurance Funds, as hereinafter defined, of an amount which, when added to the monthly amounts to be deposited as specified below will be sufficient *in the estimation of* [*the Bank*] *to satisfy the next due taxes*, assessments, insurance premiums, and other similar charges. Additionally, on the first day of each calendar month, [Wyckford] shall pay [the Bank] (a) *one-twelfth of the amount that would be sufficient to pay all Taxes payable or estimated by* [*the Bank*] *to be payable*, during the next ensuing (12) twelve months[.]

Appellee's Addendum p. 24 (emphases added).

[12] Wyckford's argument is that the second excerpt of emphasized language above gave it the option to pay into the Operating Account only the amount it was obligated to by operation of Indiana Code section 6-1.1-15-10,[3] which obligated

---

[3] This section provides, in part, that

> (a) If a petition for review to any board or a proceeding for judicial review in the tax court regarding an assessment or increase in assessment is pending, the taxes resulting from the assessment or increase in assessment are, notwithstanding the provisions of IC 6-1.1-22-9, not due until after the petition for review, or the proceeding for judicial review, is finally adjudicated and the assessment or increase in assessment is finally determined. However, even though a petition for review or a proceeding for judicial review is pending, the taxpayer shall pay taxes on the tangible property when the property tax installments come due, unless the collection of the taxes is enjoined under IC 33-26-6-2 pending a final determination in the proceeding for judicial review. The amount of taxes which the taxpayer is required to pay, pending the final determination of the assessment or increase in assessment, shall be based on:

it to pay taxes in an amount based on the assessment previous to the 2006 assessment it was appealing. In other words, Wyckford argues that it had the option to decline to pay the Bank's estimated taxes if it saw fit. We conclude that this argument is without merit. The language at issue clearly gives *the Bank* the option to require Wyckford to pay an amount it estimates to be payable. First, if we were to interpret this section to give the option to Wyckford to decline to pay the Bank's estimate, then that language would be rendered meaningless. "[W]e must interpret the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Bowen v. Monroe Guar. Ins. Co.*, 758 N.E.2d 976, 980 (Ind. Ct. App. 2001) (citation and quotation marks omitted). If the Bank's estimate had no "teeth," the language allowing it to make the estimate would be surplusage, an interpretation we cannot make. Moreover, it makes no sense that the Bank would have the power to set the initial tax payment based on its estimate (which the first emphasized excerpt clearly allows it to do) but lack that power for all subsequent tax payments. Wyckford has failed to establish that the Bank breached the Escrow Agreement and so has also failed to establish that the trial court erred in entering summary judgment in favor of the Bank on the foreclosure claim.

---

(1) the assessed value reported by the taxpayer on the taxpayer's personal property return if a personal property assessment, or an increase in such an assessment, is involved; or
(2) an amount based on the immediately preceding year's assessment of real property if an assessment, or increase in assessment, of real property is involved.

# II. Attorney's Fees

[13]   Wyckford also contends that the trial court's award of $13,603.50 in attorney's fees to the Bank was unsupported by any designated evidence, thereby rendering the award unreasonable. "We review the amount of an award of attorney fees under an abuse of discretion standard." *Brademas v. South Bend Cmty. Sch. Corp.*, 783 N.E.2d 745 (Ind. Ct. App. 2003), *trans. denied.* "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." *Id.*

[14]   We agree with Wyckford that the trial court's award of "Legal Costs" to the Bank was an abuse of discretion under the circumstances of this case. The Bank contends that it designated an affidavit from Heller that it had incurred $13,603.50 in legal costs as of October 7, 2015. The Bank, however, does not identify where this alleged affidavit may be found in the record on appeal. "As we have often noted, we will not, on review, sift through the record to find a basis for a party's argument." *Haddock v. State*, 800 N.E.2d 242, 245 (Ind. Ct. App. 2003).

[15]   Nor are we convinced by the Bank's argument that we may affirm the trial court's award of legal costs by taking judicial notice of reasonable fees in this case. We have held that "save for routine cases involving relatively small amounts, awards of attorney's fees in cases of this nature must be supported by evidence." *Berkemeier v. Rushville Nat. Bank*, 438 N.E.2d 1054, 1058 (Ind. Ct.

App. 1982). We are not prepared to say that this is a routine case involving relatively small amounts of alleged attorney's fees. We therefore remand for a hearing on the question of attorney's fees.

[16] We affirm the judgment of the trial court in part, reverse in part, and remand for further proceedings.

Vaidik, C.J., and Brown, J., concur.