## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 16 2017, 9:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin W. Marshall
Hobart, Indiana

ATTORNEY FOR APPELLEE

Matthew S. McLean
Leahy, Eisenberg & Fraenkel, Ltd.
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mircea Garba, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> West Bend Mutual Insurance Company, <br> *Appellee-Defendant.* | May 16, 2017 <br><br> Court of Appeals Case No. <br> 75A04-1611-PL-2546 <br><br> Appeal from the Starke Circuit Court <br><br> The Honorable Kim Hall, Judge <br><br> Trial Court Cause No. <br> 75C01-1510-PL-35 |

**Bradford, Judge.**

# Case Summary

[1] On October 11, 2013, a house owned by Appellant-Plaintiff Mircea Garba ("the House") and insured by Appellee-Defendant West Bend Mutual Insurance Company was seriously damaged in a fire. Garba filed a claim with West Bend, and, when the parties could not agree on the amount of the loss, the matter was evaluated pursuant to an appraisal procedure outlined in the insurance policy ("the Policy"). The appraisal procedure produced an award of $360,190.07, slightly less than the Policy limit of $360,500.00, which was then paid to Garba. Garba elected not to repair the House and, instead, purchased a new home in Arizona for $420,000.00.

[2] In 2015, Garba filed suit against West Bend, claiming that he was entitled to an additional $59,000.00 from West Bend pursuant to the Policy's Loss Settlement Provision, which, at least under certain circumstances, allows for a payment of up to 125% of the Policy limit. Both parties moved for summary judgment, and the trial court entered summary judgment in favor of West Bend. Garba contends that the trial court abused its discretion in denying its motion for summary judgment, arguing that he was entitled to the additional $59,000.00 pursuant to the Policy. West Bend contends that Garba's payment is limited to the Policy limit of $360,500.00 because he elected not to repair the House. Because we agree with West Bend, we affirm.

# Facts and Procedural History

[3]     On October 11, 2013, the House, insured at the time by West Bend and located in Knox, Indiana, was damaged by a fire. The Policy has a limit of $360,500.00 and contains the following Loss Settlement Provision:

> 1. For Coverage A - Dwelling, "we" will pay the cost to repair or replace using building materials and methods which are less costly and functionally equivalent to obsolete, antique, or custom construction materials and methods used in the original construction of the building, to place the property in habitable condition. The type of building materials used will be agreed upon by "you" and "us". If "you" and "we" cannot agree, settlement will be based on an actual cash value basis with deduction for depreciation.
>
> Any payment will not exceed the least of the following amounts:
>
> a. The repair cost of that part of the dwelling damaged;
>
> b. The amount actually and necessarily spent to repair the damaged dwelling; or
>
> c. 125% of the Coverage A, - Dwelling limit shown on the Homeowners Declarations,
>
> If "you" decide not to repair the damaged property, settlement will be on an actual cash value basis not to exceed the Coverage A - Dwelling limit of liability.

Appellee's App. Vol. II p. 143.

[4]     The Policy also contains the Appraisal Provision:

> E.    Appraisal
>
> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers

will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Appellee's App. Vol. II p. 115.

[5]  Garba submitted a claim pursuant to the Policy, and because the parties were unable to agree upon the amount of the loss, he petitioned for an appraisal in Lake Superior Court. Garba's appraiser determined that replacement cost for the House was $393,190.07 with an actual cash value loss of $294,892.57. West Bend's appraiser determined a replacement cost for the House of $331,851.83 with an actual cash value loss of $130,259.00. Garba's appraiser and the umpire eventually agreed on an appraisal award for the House of $360,190.07, which West Bend then paid to Garba. As it happened, Garba elected not to repair the House, instead purchasing another house in Arizona for $420,000.00.

[6]  On October 7, 2015, Garba filed suit against West Bend, contending that it breached the Policy by failing to pay him the full cost of his new home in Arizona and also failed to act in good faith. On March 3, 2016, West Bend moved for summary judgment, arguing that the amount of loss determined pursuant to the Appraisal Provision determined its liability. On June 8, 2016, Garba moved for summary judgment, arguing that the Loss Settlement Provision entitled him to an additional $59,809.93 because the new home that

replaced his damaged home cost $420,000.00. On October 11, 2016, the trial court entered summary judgment in favor of West Bend and denied Garba's summary judgment motion.

## Discussion and Decision

[7] When reviewing a grant or denial of a motion for summary judgment our standard of review is the same as it is for the trial court. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4 (Ind. 2010). The moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012). Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* In determining whether summary judgment is proper, the reviewing court considers only the evidentiary matter the parties have specifically designated to the trial court. *See* Ind. Trial R. 56(C), (H). We construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party. *Plonski*, 930 N.E.2d at 5. The fact that the parties have filed cross-motions for summary judgment does not alter our standard for review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Hardy v. Hardy*, 963 N.E.2d 470, 473 (Ind. 2012).

*Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012).

[8] This case requires us to construe the language of the Policy, which is, of course, an insurance contract:

> [B]ecause the interpretation of a contract is a matter of law, cases involving the interpretation of insurance contracts are particularly appropriate for summary judgment.
>
> Moreover, provisions of insurance contracts are subject to the same rules of construction as other contracts. We interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract. In accomplishing that goal we must construe the insurance policy as a whole, rather than considering individual words, phrases, or paragraphs. If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning.
>
> Additionally, we must accept an interpretation of the contract language that harmonizes the provision rather than one which supports a conflicting version of the provisions. Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence. If reasonably intelligent persons honestly may differ as to the meaning of the policy language, the policy is ambiguous. However, an ambiguity does not exist merely because the parties proffer differing interpretations of the policy language.

*Wright v. Am. States Ins. Co.*, 765 N.E.2d 690, 692-93 (Ind. Ct. App. 2002) (citations omitted).

[9] Garba argues that the appraisal award of $360,190.07 does not limit West Bend's liability and that, pursuant to the Loss Settlement Provision, he is entitled to a settlement of up to 125% of the Policy's limit, or up to approximately $450,000.00. We need not address the question of whether the appraisal award limits West Bend's liability, however, because Garba elected not to repair the House. As the Loss Settlement Provision plainly states, "[i]f 'you' decide not to repair the damaged property, settlement will be on an actual cash value basis *not to exceed the Coverage A - Dwelling limit of liability*."

Appellee's App. Vol. II p. 143 (emphasis added). Garba did not repair the House, thereby capping West Bend's liability at the Policy limit of $360,500.00.[1] Consequently, the trial court did not err in entering summary judgment in favor of West Bend.

[10] We affirm the judgment of the trial court.

Robb, J., and Barnes, J., concur.

---

[1] Garba does not specifically claim that he is entitled to the $309.93 difference between the appraisal award and the Policy limit.