Marshall MEREDITH, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 49S00–9603–CR–00235.

Supreme Court of Indiana.

May 6, 1997.

Howard Howe, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee.

SELBY, Justice.

Appellant Marshall Meredith was convicted of murder and sentenced to sixty years. On this direct appeal, he raises two issues for this Court to address. First, Appellant argues that the trial court erred when it failed to follow its own local rule regarding the listing of addresses for potential witnesses. Second, Appellant argues that he received ineffective assistance of trial counsel. We affirm the trial court.

## FACTS

Around 11:00 p.m. on July 11, 1994, Marshall Meredith ("Appellant") and his friend Roderick Townsend were talking together in an alley when Andre Wright approached them. That day, Andre Wright had been selling $20 sacks of drugs for Appellant. Appellant had given Wright five sacks, and Wright was supposed to return $100 by the end of the day. Wright, who now had a small cut above his eye, claimed that a man named Jeff Puckett had knocked him unconscious and had taken both the drugs he had not yet sold and the money he had already made. Appellant demanded that Wright take them to find Puckett in order to determine if Wright was telling the truth.

Appellant directed Townsend and Wright toward the car normally driven by Appellant. On the way to the car, Wright saw Appellant pick up a rifle. Immediately after the three of them got into the car, Townsend also noticed that Appellant had a rifle. The three men drove toward a house where Wright believed that Puckett often spent his free time. Once near the house, Wright parked the car, and he and Appellant exited the car and headed toward the house. Appellant carried the rifle with him.

The house that they were headed toward belonged to Terry Ramsey, the victim in this case. At that time, Ramsey was on the front porch with several friends. Wright called for Ramsey to come down and talk with him and Appellant. After Ramsey came out to meet Wright and Appellant, Wright asked him where his money was. Ramsey answered that he did not know what Wright was talking about. At that point, Appellant grabbed Ramsey by the throat and repeatedly demanded to know where his money and drugs were. The two men separated, and then Appellant raised the rifle and shot Ramsey several times. After the shooting, Appellant and Wright ran back to the car where they joined Townsend in fleeing the scene.

Ramsey was dead by the time the police arrived. The police apprehended Appellant soon thereafter and in close proximity to the car the police believed to have been involved in the incident. In the trunk of the car, the police found a box of .22 caliber cartridges. These cartridges were similar in appearance to the recovered fired bullets and to the recovered cartridge cases discovered at the scene of the killing. Appellant's fingerprints matched those that were on the cartridge case. The jury returned a verdict of guilty of murder. The trial court found that the aggravating factors outweighed the mitigating factor and sentenced Appellant to serve sixty years.

## DISCUSSION

### I

■ Appellant first asks this Court to consider whether the trial court erred when it failed to grant Appellant's motion to exclude witnesses pursuant to Local Criminal Discovery Rule II(A)(1).[1] Local Rule II(A)(1) states that "The State shall furnish the defense with the following material and information within its possession or control: (1) The names and last known addresses of persons whom the State intends to call as witnesses ..." Appellant argues that because the State did not provide the addresses of all of its witnesses, the witnesses should have been excluded. Specifically, Appellant points to the charging information which lists six potential witnesses, and to two lists of additional witnesses that the State intended to call. None of these lists included the addresses of potential witnesses.

Trial courts in the State of Indiana may establish rules for their own governance, so long as the rules are not inconsistent with rules prescribed by the Indiana Supreme Court or by statute. Ind.Code § 34–5–2–2; Ind.Trial Rule 81. Generally, these rules are procedural. They are intended to standardize the practice within that court, to facilitate the effective flow of information, and to enable the court to rule on the merits of the case. Their role is to help the parties and the court.

---

1. Appellant's brief calls this "Local Rule 3(A)(1)." We found the rule under the "Rules of Practice and Procedure of the Criminal Divisions of the Municipal Court of Marion County, Section II(A)(1)." No matter how described, our ruling remains the same.

It is true that once made, all litigants and the court are bound by the rules of the court. *State v. Decatur Circuit Court,* 247 Ind. 567, 219 N.E.2d 898, 899 (1966).

> A rule of court is a law of practice, extended alike to all litigants who come within its purview, and who, in conducting their causes, have the right to assume that it will be uniformly enforced by the court, in conservation of their rights, as well as to secure the prompt and orderly dispatch of business. Furthermore, a rule adopted by a court is something more than a rule of the presiding judge; it is a judicial act, and when taken by a court, and entered of record, becomes a law of procedure therein, in all matters to which it relates, until rescinded or modified by the court.

*Magnuson v. Billings,* 152 Ind. 177, 180, 52 N.E. 803 (1899).

■ However, a court should not blindly adhere to all of its rules. "Although our procedural rules are extremely important, it must be kept in mind that they are merely a means for achieving the ultimate end of orderly and speedy justice. We must examine our technical rules closely when it appears that invoking them would defeat justice; otherwise we become slaves to the technicalities themselves and they acquire the position of being the ends instead of the means." *American States Ins. Co. v. State,* 258 Ind. 637, 283 N.E.2d 529, 531 (1972). Before a court may set aside its own rule, and it should not be set aside lightly, the court must assure itself that it is in the interests of justice to do so, that the substantive rights of the parties are not prejudiced, and that the rule is not a mandatory rule.[2] *See American States,* 283 N.E.2d at 531, 20 Am.Jur.2d *Courts* § 53 (1995); 21 C.J.S. *Courts* § 130 (1990); 7 I.L.E. *Courts* § 42 (1996 supp.).

Appellant argues that his case is similar to that of *Cavazzi v. Cavazzi,* 597 N.E.2d 1289 (Ind.Ct.App.1992). In that case, the trial court had a local rule that prohibited the court from considering a support modification petition until a year after the date of the last support order, unless the petition is verified and alleges an extreme emergency that adversely affects the welfare and best interest of the children. *Id.* at 1290. Two months after the trial court set the initial support order, one spouse petitioned to modify the decree, without verifying the petition or alleging the necessary emergency. The other spouse sought to dismiss the petition based upon the local rule, but the trial court denied the motion. *Id.* The Court of Appeals reversed the trial court's order. *Id.* at 1292. The Court of Appeals did so for two reasons. First, the court held that this rule was similar to rules that determine whether a court may entertain an appeal, and thus was a mandatory rule. Second, the court held that it would be unjust to the other party to allow waiver of the rule in this situation. *Id.*

The present case is not a situation where waiver of a court rule should result in reversal. First, Appellant was not prejudiced by the waiver. The trial court heard argument on Appellant's motion to exclude all of the State's witnesses except for the law enforcement personnel. The court determined that Appellant was able to take many of the key depositions, and thus had been able to find the witnesses with little trouble. Nor does Appellant argue that he was prejudiced, only that he was entitled to strict compliance with the rule. Second, justice was advanced, not hindered, by the waiver. For example, the court determined that, though Appellant had known about the lack of compliance for quite awhile, Appellant did not act until the morning of the jury trial. Also, as stated above, Appellant was able to take many key deposi-

---

2. Generally, rules that are jurisdictional (those that set time limitations or other requirements which must be met before the court may hear the case) are mandatory and not directive. *Cavazzi v. Cavazzi,* 597 N.E.2d 1289, 1292 (Ind.Ct.App. 1992) (stating that "[w]e are not at liberty, however, to waive compliance with our rules that determine whether we may entertain the appeal in the first place, such as App.R. 2 (time limits) and App.R. 4 (jurisdiction)."); *see also James C.*

*Curtis & Co. v. Emmerling,* 218 Ind. 172, 31 N.E.2d 57 (1941) (noting that a rule which allowed an appellant 30 days after submission to file a brief was jurisdictional and mandatory); *Dixon v. State,* 566 N.E.2d 594 (Ind.Ct.App.1991) (holding that Court of Appeals did not have jurisdiction for appeal when appellant failed to meet the thirty day deadline for filing either a motion to correct errors or a praecipe with the trial court).

tions and so was able to fully present a defense. Thus, the trial court was able to reach a judgment on the merits rather than on a technicality. Finally, this rule is not in the nature of a mandatory rule.

In this special circumstance, the court was correct to set aside its own rule. Appellant was not prejudiced in any way by the waiver, it was in the interests of justice to waive compliance, and the rule is not mandatory. We agree with the trial court's feeling that "to strictly adhere to the black letter rule of that particular facet of the local rule would be unjust." (R. at 152.) As the court correctly stated, "the purpose of the local rules is to expedite the discovery process, not to impede trial." (R. at 153.) Our holding is in no way intended to provide a future or present excuse for the State's lack of compliance with the rule. Rather, we acknowledge that in this particular case, the trial court properly considered both the rule and its reason in deciding to waive compliance.

## II

■ Appellant next raises the issue of whether he received ineffective assistance of trial counsel. Appellant argues that his counsel failed to raise the issue during trial of whether his mental retardation diminished his capacity to form the requisite intent to commit murder. Appellant notes that his mild mental retardation was not made a part of the record until the sentencing hearing when Appellant's counsel brought Appellant's mild mental retardation to the court's attention. The court considered the mild retardation as a mitigating factor.

■ In order to prove that one received ineffective assistance of counsel, a defendant must prove both parts of a two part test as set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, defendant must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Second, defendant must show that his counsel's substandard performance was so prejudicial as to deny the defendant a fair trial. *Steele v. State*, 536 N.E.2d 292 (Ind.1989). Only when a conviction occurs as a result of a breakdown in the adversarial process rendering the trial result unreliable is a defendant denied a fair trial. *Siglar v. State*, 541 N.E.2d 944, 946 (Ind. 1989). To demonstrate that a trial result is unreliable, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Spranger v. State*, 650 N.E.2d 1117, 1121 (Ind.1995).

■ Appellant cannot prove that the actions of his trial counsel rendered his trial result unfair. While an attorney's trial performance may be criticized, "isolated poor strategy, inexperience, or bad tactics do not necessarily constitute ineffective assistance of counsel." *Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind.1996). Appellant's defense theory centered on attempting to prove that Andre Wright had done the killing. Appellant's counsel had no reason, therefore, to raise the issue of mental capacity. In fact, arguing that Appellant lacked the mental capacity to form the requisite intent would have been contrary to Appellant's claim—Appellant contended that he did not do the crime, not that he did not intend to do the crime. Appellant's counsel's tactical choice to raise diminished mental capacity only during the sentencing hearing as a mitigating factor was not unreasonable.

## CONCLUSION

The trial court did not commit reversible error in waiving a local trial rule. Appellant received effective assistance of counsel. The trial court's decision is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.