## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 27 2017, 10:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rebecca L. Billick
Billick Mediation & Family Law
Valparaiso, Indiana

ATTORNEY FOR APPELLEE

R. Cordell Funk
Funk & Wendlinger, LLC
Crown Point, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jodee Meyers, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Paul Meyers, <br> *Appellee-Respondent.* | April 27, 2017 <br><br> Court of Appeals Case No. 45A05-1609-DR-2175 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Elizabeth F. Tavitas, Judge <br><br> Trial Court Cause No. 45D03-1403-DR-230 |

**Najam, Judge.**

## Statement of the Case

[1]     Jodee Meyers ("Mother") appeals the dissolution court's order modifying her custody over her children born of her marriage to Paul Meyers ("Father").

Mother presents several issues for our review which we consolidate and restate as follows:

1.  Whether the dissolution court erred when it considered various motions despite Father's alleged noncompliance with local rules.

2.  Whether the dissolution court abused its discretion when it made certain evidentiary rulings.

3.  Whether the dissolution court's findings are supported by the evidence and whether its conclusions are supported by the findings.

We affirm.

## Facts and Procedural History

Mother and Father married in May 2004, and two children were born of the marriage, J.M. and H.M. ("the Children"). In March 2014, Mother filed a petition for dissolution of the marriage. The Parents entered into a stipulated provisional order whereby Mother had temporary physical custody of the Children, and Father exercised parenting time "as agreed to or, in the absence of agreement, pursuant to the Indiana Parenting Time Guidelines." Appellant's App. at 16.

Following a final hearing on December 14, 2015, on January 15, 2016,[1] the dissolution court entered a final dissolution decree whereby the court awarded the Parents joint legal and physical custody of the Children.[2] The dissolution court ordered that the Children would spend alternating weeks with each parent. In the decree, the dissolution court found in relevant part that "[Mother] repeatedly denies parenting time or interferes with [Father]'s parenting time." *Id.* at 21. The dissolution court also found in relevant part as follows:

> 17. [Mother] admitted that she does not return phone calls initiated by [Father] to the children.
>
> 18. [Mother] frequently calls the police on [Father] during parenting time exchanges. [Father] estimated that [Mother] has called the police in excess of 80 times.
>
> 19. [Mother] frequently argues with [Father] in the presence of the children during parenting time exchanges.
>
> 20. [Mother] is engaging in repeated conduct that demonstrates [Mother]'s resistance of [sic] [Father]'s time with the children that most likely will lead to alienation of the father/daughter relationships. This behavior is contrary to the best interests of the children. This conduct includes [Mother]'s repeated arguments with [Father] in front of the children; [Mother] calling the police during parenting time exchanges; [Mother] limiting [Father]'s telephone communications between

---

[1] Following the final hearing, but before the final decree, Mother denied Father's parenting time on January 8, 2016, and January 14, 2016.

[2] Father remarried shortly after the final dissolution decree was entered.

[Father] and the children; [Mother] speaking negatively about [Father] to the children; and [Mother] denying [Father] parenting time.

*Id.* at 22.

Father was scheduled to have his first full week of physical custody with the Children on January 22, but Mother kept the Children with her that week. Accordingly, on January 29, Father filed a verified application for an injunction against Mother alleging in relevant part as follows:

> 1. **Compliance with Local Rule 9**. Father's counsel wrote to Mother via email on January 19, 2016[,] in an attempt to resolve all issues set forth herein. [[S]ee attached Exhibit "A"]. No response has been received from Mother as of January 29, 2016[,] and since January 7, 2016. Mother has denied Father his parenting time and/or shared custodial time with their minor children. This application is filed at this time because it is apparent that the matters set forth herein will not be resolved without Court intervention and Mother is likely to continue denying Father his custodial rights as set forth in this Court's Decree of Dissolution of Marriage.
>
> * * *
>
> 4. From January 8, 2016[,] (Father's weekend) through January 15, 2016, Mother denied Father his parenting time with their daughters under the terms of the provisional order then in effect. He was denied parenting time on the weekend of January 8, 2016[,] and weekday parenting on January 14, 2016.
>
> 5. Per the shared custody provisions of the Decree entered on January 15, 2016, Father was to have the children for a one week period beginning at 5:30 p.m. on January 22, 2016[,] and ending

at 5:30 p.m. on January 29, 2016. Mother refused to allow him to have the children during the specified time period and she has not permitted him to see the children or otherwise communicate with them.

*Id.* at 32. Also on January 29, Father filed a verified motion for a rule to show cause why Mother should not be held in contempt for violation of the final decree.

[5] At the conclusion of a hearing on Father's motion for injunction, the dissolution court granted the injunction from the bench and stated as follows:

> Okay. I will, first of all, tell you that Mother has not complied with the requirements of the Local Rules and the Orders of the Court to get her parenting time—I'm sorry, her parenting classes completed. I'm going to tell you right now, you don't have the proper parenting skills and until you get to that class and you do everything necessary, you don't have the parenting skills that are necessary for a divorced parent. You just don't. I've been in this business for a long time as well, and I'm not going to continue to have this. I will not, and I can tell you what happens in these cases. You're not going to like to hear it, but this is my experience. We'll keep coming back here. You will spend all your money doing this, and everyone becomes a loser in this, in this experience that I'm seeing. You lose your money. You lose any relationship that you have with Father that you will need, I guarantee you. You will need his help at some point in these children's lives. You're, you're too young and you don't understand that it takes two parents to raise children, especially in this day and age. There are things you're not going to be able to handle and you're going to need his help, so you're going to lose that. You're going to lose the respect of your children when they grow up and they understand what, what is going on and you're going to lose your children's best mental health. They will

be in counseling as adults. Trust me. I've seen this over and over and over and over again. You may end up losing custody totally and that happens in these types of cases. So you're going to lose a lot, and if Father does this behavior that you're doing, he's going to lose everything, and then you're just going to have messed up children for the rest of your lives and then maybe you'll be supporting them because they can't work because they have depression. I mean it goes on and on and on and on and if you don't believe me, you haven't taken the classes. You need to take the classes and you need to do your homework. There's all kinds of books out there on divorce and children and if you don't do it, then you are, you are walking into the situation of having your children just fail. There's nothing wrong with either one of you that you can't be good parents to these children. There's not. It's your choice, and if you choose not to, then the Court's going to continue to issue Orders that give these children the best chance to have a healthy, happy childhood and healthy adult life. I'm giving you 30 days to complete those parenting classes, and if you don't, then there are going to be sanctions. I guarantee you that there will be sanctions.

I'm granting the injunction. I don't want to see this type of case again between the two of you. My Orders are clear. The local library. Local library is Hammond. There is nothing in there that says that the children need to go inside. As I indicated before, it's counterintuitive to everything you guys were doing before which, like I said, they're not going to go in the police station and play. That's just you trying to control this, and you don't get to control this. This is Father's time. I am granting the request to have—he can have the children for two weeks. There will always be make-up time. Every time you deny, Father gets make-up time, and I don't believe that you can't encourage an eight-year-old, and if you can't, then you don't have the right parenting skills. An eight-year-old is—they're at the easiest age to encourage. Sometimes it's the, you know, two-year-olds, there are temper tantrums or it's the twelve-year-olds who'd rather be

on their phone or, you know, at home with their friends, whatever. This is the easiest age, so I'm just not buying it.

Tr. Vol. II at 55-57.

[6] On February 12, Father filed a verified petition for emergency modification of custody and for supervised parenting time and request for emergency hearing. In that petition, Father stated in relevant part as follows:

> 1. **Compliance with Local Rule 9**. On the early afternoon of February 12, 2016, Father's attorney unsuccessfully attempted to reach Mother's counsel, Rebecca L. Billick, by phone and she left a message for counsel requesting a return call due to a matter of extreme urgency. She did not receive a return call prior to filing this petition. Counsel also sent a facsimile to Mother's attorney on that date with the same request. Events set forth below have occurred since an injunction was granted against Mother on February 9, 2016. These events support the likelihood that the emotional development of the parties' minor children will be impaired and they will be alienated from Father if the Court does not immediately intervene.
>
> * * *
>
> 8. Since the injunction hearing on February 9, 2016, Mother has attempted to interfere with Father's custody/parenting time by making statements to the children during phone calls which upset the children and make them cry. She repeatedly asks them if they are scared and implies that they should be when with Father. She tells them how sad she is without them.
>
> 9. On February 11, 2016, during Father's custodial time, Mother permitted her mother (maternal grandmother) to go to [H.M.]'s school and sit with the child in her classroom. When Father went to pick up the child from school on that date, [H.M.] was

brought to Father's vehicle crying. The teacher who brought the child to the vehicle verified that the child was crying because she did not want to leave her grandmother. While sobbing, [H.M.] reported to Father that maternal grandmother told her that "mommy" and "grandma" were very sad that the girls were not with them and that they missed them very much.

10. The parties' older child, [J.M.], has informed Father that both Mother and maternal grandmother have instructed her to call the police (911) if they are left in the care of Father's wife.

11. Mother simply will not comply with the orders of this Court and if not stopped, she will continue to engage in conduct designed to alienate the children from their Father.

12. Mother's conduct is harmful to the children and their emotional development.

13. The above and foregoing behavior warrants the immediate transfer of full legal and physical custody to Father and the entry of an order that Mother be granted supervised parenting time.

*Id.* at 41-43. Mother filed a motion to strike Father's emergency petition, which the dissolution court denied.

On March 7, Mother moved her personal belongings into an apartment in Crown Point leased by her fiancé, Robert Krespo. On March 9, Mother filed a notice of relocation stating that she intended to move from Hammond to Crown Point "on or before April 5, 2016." *Id.* at 66. And on March 11, Mother and the Children moved into Krespo's two-bedroom apartment. Krespo has a daughter and two stepdaughters from a previous marriage, and his

three children routinely stayed with him in the apartment two or three nights per week.

[8] On March 11 and 17, the dissolution court held a hearing on Father's emergency petition for modification of custody. At the conclusion of that hearing, the dissolution court took the matter under advisement. In addition, Father objected to Mother's notice of relocation, and the dissolution court set that matter for a hearing for May 18.

[9] Following hearings on all pending motions on May 18 and 19, on June 16, the dissolution court issued its order modifying custody and found and concluded in relevant part as follows:

> 1. The Court issued a Decree of Dissolution of Marriage on January 15, 2016, granting the parties joint physical and legal custody of their two daughters, [J.M.], born August 9, 2007; and [H.G.], born September 26, 2011. Custody was contested at that time. Father requested joint physical and legal custody and mother requested sole physical custody.
>
> 2. At the time of the dissolution of marriage, Mother was residing in her deceased grandmother's home.
>
> 3. At the time of the dissolution, Mother and Father had a contentious relationship.
>
> 4. Mother has a history of denying Father his parenting time with the children.
>
> 5. Mother has involved the children in drama with Father and has thwarted Father's relationship with the children.

6. Mother had never testified prior to the dissolution that she was planning to move in with her boyfriend.

7. Mother filed a Petition for Dissolution of Marriage on March 20, 2014, and she has moved the children three times since then. Mother moved to her mother's home, then to her Grandmother's home, and now to her boyfriend's home.

8. Mother works 20-26 hours per week, earning $10.00 per hour.

9. Mother lives with her boyfriend in a two-bedroom apartment leased by her boyfriend. Her boyfriend has one child and two former stepchildren who spend one to three nights per week in the home. Mother is expecting another child with her boyfriend.

10. The parties' daughter [J.M.] is experiencing psychological issues and sees a therapist.

11. Mother did not notify Father of her intent to move until after she had moved.

12. The Court does not find Mother's testimony credible regarding her statements that she was forced to move and that she did not have sufficient time to notify Father. This Court finds that Mother had intended to move in with her boyfriend.

13. Father works up to 60 hours per week.

14. Since the dissolution, Father has remarried. His wife does not work.

15. Father and Mother continue to have a contentious co-parenting relationship that is affecting the children's psychological well-being.

16. Mother makes choices to move without considering the impact on the children.

17. Mother is voluntarily underemployed and has no plans to provide stable housing for the children on her own. She has relied on family members and now her boyfriend to provide a home.

18. The children need stability.

19. The children are acting out emotionally at school and at Father's home.

\* \* \*

CONCLUSIONS OF LAW:

1. Mother has not met her burden that the recent change in residence was made in good faith and for a legitimate reason. Mother's testimony was not credible. Father has met his burden that relocation of the children is not in the children's best interest.

2. There has been a substantial and continuing change in the following: the interaction and relationship between the children and Father; the children's adjustment to their home and community; and the mental health of the children and Mother. Mother has impeded the relationship of the children and Father. Mother has not co-parented with Father. Mother has not kept Father informed of matters regarding the children and her plans to move. [J.M.] is in counseling. Children at such a tender age cannot be expected to adjust to three new homes within two years. Mother makes choices that are not in the children's best interest and will continue to do so. Mother shows no respect for Father's concerns or Father's relationship with the children.

3.  Father has a stable income, a stable home, and stable relationship with his new wife.  This Court recognizes that this change of custody will be difficult on the children; however, this will result in the long-term emotional and psychological well-being of the children.

4.  Mother has demonstrated that she does not respect court orders.  Mother continues to violate the Court orders regarding parenting time.  Mother does not respect the children's need to have a stable life free from conflict.  Mother does not respect the need of her children to have a loving relationship with Father free from Mother's negative influence.  Mother simply refuses to abide by court orders and to make decisions that are in her children's best interests.

5.  It is in the best interest of the children to modify custody to grant sole legal and physical custody to Father.

6.  Mother needs individual counseling before the Court will consider family counseling.  Mother's poor choices are affecting the family and Mother needs to address her issues individually before the children are brought into family counseling.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:

1.  The Court GRANTS Father's Petition to Modify Custody. Father is granted sole legal and physical custody of the parties' two minor children.

2.  Mother is granted parenting time pursuant to the Indiana Parenting Time Guidelines.  Due to the high-conflict nature of the parents, the parties shall strictly follow the Indiana Parenting Time Guidelines.

3. Father's objection to Mother's relocation is moot based upon the modification of custody.

4. Mother's Motion for Family Therapy is DENIED at this time.

5. Mother is ordered to attend individual counseling as a condition of unsupervised parenting time. Mother shall undergo a psychological evaluation and attend individual therapy to address the following issues and any issues determined by the psychological evaluation: Mother's poor choices for the children; Mother's disparaging Father in the presence of the children; and the drama Mother creates in the presence of the children during parenting time exchanges.

*Id.* at 74-78. This appeal ensued.

# Discussion and Decision

## *Issue One: Violation of Local Rules*

[10] Mother first contends that the dissolution court erred when it considered various motions despite Father's alleged noncompliance with certain local rules. In particular, Mother maintains that Father: did not make a "personal or telephonic consultation" with Mother in violation of F.L.R. 45-FL00-9[3] ("Rule 9") when he filed his application for injunction and motion for rule to show

---

[3] F.L.R. 45-FL00-9 provides in relevant part as follows:

A. Duties Regarding Consultation. Except in emergencies or when it might create a danger or substantial prejudice or is otherwise unreasonable to do so, counsel and pro se parties shall make a reasonable attempt to have a personal or telephonic consultation to resolve any issue before filing or seeking any other relief through the court. Counsel and pro se parties contacted for a consultation shall make themselves reasonably available for consultation. The duty of consultation shall be continuing.

cause and did not contact Mother before he filed his petition for emergency modification of custody in violation of "the Lake County Rules of Family Law."[4] Appellant's Br. at 24-25. Mother states that,

> [h]ad the trial court followed the Lake County Rules of Family Law and dismissed Father's Verified Application for Injunction and Verified Petition for Emergency Modification of Custody while granting Mother's Motion for Court Appointed Therapist, or in the alternative a guardian ad litem, days of litigation may have been avoided; thousands of dollars would have been saved for this family; the transition for the Children to equal (50/50) parenting time may have been accomplished with less negative impact to the Children; and, in the worst case, had a guardian ad litem or family therapist been appointed, the trial court and the Children would have then at least had the benefit of trustworthy evidence from the therapist or guardian ad litem to better guide the trial court's future decisions for the Children. The trial court's lack of adherence to the Lake County Rules of Family Law caused significant harm to Mother (and potentially the Children) and is a reversible error.

*Id.* at 28.

[11] "As a general matter, local rules are procedural and 'are intended to standardize the practice within that court, to facilitate the effective flow of information, and to enable the court to rule on the merits of the case.'" *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 646 (Ind. 2012) (quoting *Meredith v. State*,

---

[4] To the extent Mother attempts to argue that the dissolution court failed to follow its own rules when it denied her motion to strike and/or her motion for a court appointed therapist, Mother has not supported that contention with cogent argument and it is waived.

679 N.E.2d 1309, 1310 (Ind. 1997)). Once a trial court promulgates a rule, the court and all litigants are generally bound by the rule. *Andrews v. Monroe Cty. Dep't of Child Servs. (In re D.A.)*, 869 N.E.2d 501, 509 (Ind. Ct. App. 2007) (citing *Meredith*, 679 N.E.2d at 1311. Nevertheless, a trial court may set aside its own rule—although it should not be set aside lightly—if the court assures itself that it is in the interests of justice to do so, that the substantive rights of the parties are not prejudiced, and that the rule is not a mandatory rule. *Id.* (citing *Buckalew v. Buckalew*, 754 N.E.2d 896, 897 (Ind. 2001)).

[12] Here, in each of the challenged pleadings, Father stated that he had attempted to contact Mother and/or her attorney prior to filing the pleadings, with no response. To the extent Mother contends that Father's email to Mother prior to his motion for injunction did not comply with Rule 9, she is putting form over substance, and we reject that contention. And Father attempted to contact Mother's attorney by telephone and facsimile before he filed his petition for emergency modification of custody, albeit earlier the same day. In any event, Mother has not shown that she was prejudiced by Father's alleged failure to comply with the local rules. As Father points out, "Mother's counsel did not respond prior to filing of each of these motions by Father, but was clearly capable of contacting Father's counsel and attempting to resolve each of them prior to the actual litigation of these motions." Appellee's Br. at 15. Mother has not demonstrated any error on this issue.

## Issue Two: Evidentiary Rulings

[13] A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Barnett v. State*, 916 N.E.2d 280, 286 (Ind. Ct. App. 2009), *trans. denied*. A trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id.*

[14] Mother contends that the "aggregate" of the dissolution court's evidentiary rulings "rise to an abuse of discretion warranting rehearing." Appellant's Br. at 28. In particular, Mother asserts that the dissolution court abused its discretion when it: "considered argument of counsel as evidence and also permitted argument of counsel to confuse the proceedings"; excluded from evidence real estate documents regarding the sale of her grandmother's house; excluded from evidence a videorecording of a phone call between Mother and the Children; excluded from evidence J.M.'s therapist's notes; and excluded from evidence various other proffered exhibits and testimony. *Id.* at 29. We address each contention in turn.

### Argument of Counsel

[15] We reject Mother's contention that the dissolution court "considered argument of counsel as evidence and also permitted argument of counsel to confuse the proceedings." *Id.* First, to the extent Mother maintains that the dissolution court improperly relied on opposing counsel's argument and "Father's

impeached testimony" when it found that Mother was not credible, that argument finds no support in the record. *Id.* Second, Mother does not support her contentions on this issue with cogent argument but merely lists some of the "fourteen occasions" when the dissolution court allegedly "became confused due to argument of counsel." *Id.* at 31. Mother has not persuaded us that the dissolution court improperly considered argument of counsel or was confused by said argument.

*Real Estate Documents*

[16] Next, Mother contends that the dissolution court abused its discretion when it excluded from evidence her proffered Exhibit 22, which she describes as "true, complete, and authentic copies of the Mutual Release from Purchase Agreement and Purchase Agreement along with a standard Business Record Affidavit signed and witnessed by a representative of the real estate company[.]" Appellant's Br. at 33. First, Mother does not include these documents in her appendix on appeal. Second, Mother does not explain what she had intended to prove with the proffered evidence, other than to state that it had "profound probative value" and would have "correct[ed] the damage being done by opposing counsel's false representations and to establish the truth of a

relevant disputed point[.]" *Id.* Mother has not presented cogent argument in support of her contention on this issue, and, thus, we cannot address it.[5]

## *Videorecording*

[17] Mother contends that the dissolution court abused its discretion when it excluded from evidence a videorecording Mother made of a phone call between her and the Children while the Children were staying with Father. Mother states that she "recorded herself due to the repeated accusations [that] the Children were being harmed in the phone conversations." Appellant's Br. at 35. Citing *Apter v. Ross*, 781 N.E.2d 744, 754 (Ind. Ct. App. 2003), the dissolution court stated that "a parent's concern for a child's well-being must be the purpose" in recording a child's telephone conversation. Tr. Vol. II at 205. The dissolution court excluded the proffered recording because it found that Mother had not shown that that was her reason for making it. But the dissolution court went further and stated as follows:

> Okay, and I and I will tell you this and I will say it on the record because it's important for me to say this: I find these types of recordings and these types of proceedings more damaging, that cause more harm than the good for the purpose of making the recordings, which I believe it's a policy behind the recordings being allowed in certain limited matters. So, if I were to open the

---

[5] We can only surmise that Exhibit 22 would have shown that Mother had to move out of her grandmother's house in a rush, but Mother's brief simply does not clarify either the content or purpose of the proffered exhibit.

door and make it a wider door, it would lead to nothing but harmful consequences. So, that's my ruling.

*Id.* at 206.

[18] On appeal, Mother maintains that, because *Apter* involved a recording between children and a third party, it is inapposite here and she was not required to show that she had made the recording because of her concern for the Children's well-being. But Mother does not address the dissolution court's ultimate ruling that it was excluding the recording because such recordings generally "cause more harm than good." *Id.* And we question the probative value of the proffered recording, given that Mother knew that she was recording it and it would not necessarily reflect a typical phone call between Mother and the Children. The dissolution court did not abuse its discretion when it excluded the videorecording from evidence.

### Therapist's Notes

[19] Mother contends that the dissolution court abused its discretion when it excluded evidence "about the frequency and context of [J.M.]'s individual therapy as well as the notes of the therapist." Appellant's Br. at 39. Mother maintains that, because she was not permitted to introduce this evidence, "the only negative evidence in the Record about the Children's mental health is the impeachable testimony of Father." *Id.*

[20] Once again, Mother has failed to include in her appendix on appeal this proffered evidence. And Mother does not describe in any detail what the

proffered evidence included or what it would have proved. Thus, we cannot say that the dissolution court abused its discretion when it excluded this proffered evidence.

### Other Exhibits and Testimony

[21] Finally, Mother contends that the dissolution court abused its discretion when it excluded from evidence her proffered exhibits 6, 11, 14, 15, and 16. First, again, Mother has not included any of the proffered exhibits in her appendix on appeal. Second, Mother does not describe in any detail the nature or content of Exhibits 6, 11, or 14. Mother describes Exhibit 15 as a text from Father asking her why there was furniture on the front lawn of her house on April 2. Mother maintains that that text was proof that she was "being forced to move under the timeline of third parties." Appellant's Br. at 38. And Mother describes Exhibit 16 as "pictures of the home on April 3rd after Mother's family had removed all of her deceased grandmother's furniture in anticipation of the house being sold." *Id.*

[22] Taking Mother's word for the content of Exhibits 15 and 16, we cannot say that those exhibits offered probative evidence of the facts Mother was attempting to prove. Furniture on a lawn can indicate any number of things, including a yard sale. And photographs of the home with the grandmother's furniture removed

is likewise ambiguous. Regardless, Mother and Krespo[6] both testified that Mother was forced to move with very short notice. Mother cannot show that the dissolution court abused its discretion when it excluded the proffered exhibits. And with respect to the other exhibits, without any explanation of the content of those exhibits, we cannot say that the dissolution court abused its discretion when it excluded them from evidence.

[23] Mother also asserts that the dissolution court abused its discretion when it "refused to permit [H.M.'s] teacher to share relevant observations and lay opinions about what she observed of [H.M.], grandmother, and the parties." *Id.* at 37. But Mother does not set out in her brief what evidence she had sought to present through the teacher's testimony. And, moreover, Mother made no offer of proof after the court sustained Father's objections to Mother's questions to the teacher. Mother has not preserved this issue for our review. *See Dowdell v. State*, 720 N.E.2d 1146, 1150 (Ind. 1999) (holding it is well settled that an offer of proof is required to preserve an error in the exclusion of a witness' testimony).

### Issue Three: Findings and Conclusions

[24] Mother contends that twelve of the dissolution court's twenty findings are not supported by the evidence and/or do not support a modification of custody,

---

[6] Mother also briefly states that the dissolution court did not permit Krespo to testify about the "urgency of the move." Appellant's Br. at 38. But she does not support that contention with cogent argument. And, in any event, Krespo did testify that Mother was forced to move in an urgent manner.

and she also contends that three of the dissolution court's conclusions are not supported by the evidence.[7] A modification of custody is a determination that rests in the sound discretion of the trial court. *Jarrell v. Jarrell*, 5 N.E.3d 1186, 1190 (Ind. Ct. App. 2014). When reviewing the trial court's decision, we may neither reweigh evidence nor judge the credibility of witnesses. *Id.* We consider only the evidence favorable to the trial court's judgment and all reasonable inferences derived from it. *Id.*

[25] It appears that the dissolution court in this case entered findings of fact and conclusions *sua sponte*. In this scenario, the specific findings control only with respect to the issues they cover, while a general judgment standard applies to issues outside the court's findings. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1255 (Ind. Ct. App. 2010). The trial court's findings or judgment will be set aside only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.*

[26] Indiana Code Section 31-17-2-21 (2017) provides in relevant part:

> (a) The court may not modify a child custody order unless:
>
> > (1) the modification is in the best interests of the child; and

---

[7] Mother also challenges three of the dissolution court's findings it made in the final decree of dissolution. But Mother did not appeal from the final decree, and those issues are waived.

(2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 . . . of this chapter.

(b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

[27] The relevant factors listed under Section 8 are:

(1) The age and sex of the child.
(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

Ind. Code § 31-17-2-8. "[A] change in circumstances must be judged in the context of the whole environment, and the effect on the child is what renders a change substantial or inconsequential." *Jarrell*, 5 N.E.3d at 1193 (citation and quotation marks omitted).

[28] Mother's contentions that the dissolution court's findings and conclusions are not supported by the evidence and/or do not support modification of custody amount to a request that we reweigh the evidence and assess the credibility of witnesses, which we will not do. Mother also fails to support several of her contentions with cogent argument. The dissolution court heard evidence to support each of its findings, and the findings are adequate to support the court's conclusions. Mother has not shown that the dissolution court abused its discretion when it modified custody of the Children.

[29] Affirmed.

Riley, J., and Bradford, J., concur.